(91 Misc. Rep. 290)

BROWNELL v. SNYDER et al.

(Supreme Court, Trial Term, Fulton County. July, 1915.)

1. WITNESSES ☞144—COMPETENCY—TRANSACTIONS WITH DECEASED PERSONS. .
      Where, in a suit by a judgment creditor of a decedent to set aside a conveyance by decedent to his son, since deceased, as in fraud of creditors, the defense was that the judgment had been procured by fraud and collusion between the judgment creditor and the deceased debtor for services alleged to have been rendered by the creditor and his infant daughter to the deceased debtor, the creditor and the daughter were incompetent to testify to the rendition of the services.
      [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 625–643; Dec. Dig. ☞144.]

2. FRAUDULENT CONVEYANCES ☞231 — REMEDY — COLLATERAL ATTACK ON PLAINTIFF'S JUDGMENT—FRAUD.
      A defendant, in an action by a judgment creditor to set aside a conveyance by the debtor to defendant as fraudulent, may question the validity of the judgment, and prove that it was procured by fraud and collusion of the creditor and debtor; defendant not being a party to the action in which the judgment was rendered.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 672; Dec. Dig. ☞231.]

3. FRAUDULENT CONVEYANCES ☞295—EVIDENCE—COLLATERAL ATTACK ON JUDGMENT—FRAUD.
      Evidence *held* to show that the judgment forming the basis of a suit to set aside a conveyance as fraudulent against the judgment creditor was procured by fraud and collusion.
      [Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 867–875; Dec. Dig. ☞295.]

Action by William Brownell against John M. Snyder and Charles M. Snyder, prosecuted after their death against Orvilla Melvina Snyder, individually and as executrix of Charles M. Snyder, deceased, and others. Judgment of dismissal of complaint.

Horton D. Wright, of Gloversville, for plaintiff.

William S. Cassedy, of Gloversville, for defendant Orvilla Melvina Snyder.

Nelson H. Anibal, of Gloversville, for defendant Joseph Snyder.

WHITMYER, J. This action was commenced by plaintiff against John M. Snyder and Charles M. Snyder, his son, to set aside a conveyance of a farm, situated in the town of Mayfield, Fulton county, N. Y., given by said John M. Snyder to said Charles M. Snyder, on the claim

that the conveyance was in fraud of plaintiff as a judgment creditor of said John M. Snyder. The answers of the Snyders were substantially alike, and alleged, in effect, that the conveyance was made for a good and valuable consideration, in good faith, and without any intent to defraud, that plaintiff's judgment was fraudulent and void as against Charles M. Snyder, in that it was the result of a conspiracy between plaintiff and John M. Snyder to make him pay the amount of the same in some way, and that John M. Snyder had sufficient property on plaintiff's premises with which he could have paid the same. The Snyders are dead, and the action is being continued against their representatives.

The deed was dated April 21, 1903, was for the consideration of "one dollar and other good and valuable considerations," and provided that the grantee should care for and provide the grantor, during life, with a suitable home and maintenance, including board, clothes, necessary medical attendance, and such other necessaries as he might require, and give him a suitable and proper burial upon his death. The deed was recorded on the day that it was given. At the same time, John M. Snyder gave to his said son a bill of sale of a bay mare, known as the Joe Snyder mare, some stock, wagons, sleighs, farming implements, all of his household goods, and all the rest of his goods, chattels, and credits. This was filed in the town clerk's office on the same day. Plaintiff was a son-in-law of John M. Snyder, and commenced an action against him in Justice's Court on May 25, 1903, based on a claim for board furnished to him for 10 days prior to January 10, 1902, and for 13 days prior to April 13, 1903, and for alleged services rendered to him and to his wife by his daughter, Hattie Bettler, commencing when she was 14 years of age and averaging one day each week from August 6, 1897, until the year 1901, with 10 days in the year 1902, during the last illness of John M. Snyder's wife. John M. Snyder resided with his said son at the time of the commencement of that action.

The trial took place October 3, 1903. The parties appeared in person and by their attorneys, and plaintiff obtained judgment on October 6, 1903, for $50 damages and $6.06 costs. On October 24, 1903, John M. Snyder appealed from said judgment to the County Court for a new trial. Charles M. Snyder became surety on the undertaking on appeal, and undertook, if the appeal was dismissed or judgment rendered against John M. Snyder, to pay the judgment or the portion unsatisfied, not exceeding the sum of $200. The trial in County Court came on at the term commencing December 4, 1905. At that time John M. Snyder was living with plaintiff. He went to plaintiff's house to live on July 15, 1905. He brought with him a mare and colt and some property not included in the bill of sale. Plaintiff testified that the mare and colt were turned over to him, on August 21, 1905, for board outside of that included in the judgment. John M. Snyder had been with him since July 15, 1905. Plaintiff testified, further, that he sold the mare for $50 and credited John M. Snyder with $50 for the colt, which he still has, and he estimated the value of the other property at about $25. John M. Snyder testified, in supplementary proceedings

subsequently had, that the mare and colt were blooded and that the colt was worth $300. One witness for defendants testified that they were worth $100, another $200, and that the other property was worth $81.50. The property, which he brought with him, was greater in value than the amount of the justice's judgment, and about equal to the amount of the judgment in County Court.

The trial in County Court was had December 13, 1905. Plaintiff appeared in person and by attorney. John M. Snyder did not appear. His attorney did, and went on with the trial, as well as he could, without his client. The result was a verdict for plaintiff for $196.79, and judgment was entered thereon, on December 26, 1905, for that amount, with $90.36 costs. Execution was issued January 6, 1906, and returned unsatisfied January 12, 1906, after which supplementary proceedings were instituted. Thereafter, and on April 11, 1906, plaintiff commenced an action in County Court against Charles M. Snyder on his undertaking. Charles M. Snyder answered, and alleged a conspiracy between plaintiff and John M. Snyder, by which judgment was to be obtained against the latter for as large an amount as possible, so that he, Charles M. Snyder, as surety, might be compelled to pay the amount of the undertaking. That case came on for trial December 7, 1906. At the close of the evidence, the court directed a verdict for plaintiff for $200, and plaintiff entered judgment thereon for $274.59, damages, and costs. Charles M. Snyder thereupon appealed to the Appellate Division, which reversed the judgment and granted a new trial. Brownell v. Snyder, 122 App. Div. 246, 106 N. Y. Supp. 771. The court held that a judgment, although not ordinarily subject to attack in a collateral proceeding, may be impeached collaterally by a stranger, who is injured thereby, if obtained by fraud and collusion, and held, further, that the case was for the jury. The new trial resulted in a verdict of no cause of action, and judgment for $352.41 costs, against plaintiff, was entered thereon July 13, 1908.

Plaintiff did not appeal, but commenced this action against John M. Snyder and Charles M. Snyder on October 26, 1908, to set aside the said deed. John M. Snyder had returned to his son just before this. The farm consists of 80 acres. There were buildings on it when the deed was given, but these have been destroyed. Plaintiff testified that it was worth $1,000 with the buildings and is worth $400 now. For defendants, Archibald Snyder testified that it was worth $500 with the buildings, and is worth from $150 to $200 now; Brower, $600 with the buildings and from $150 to $200 now; Berry, from $500 to $700 with the buildings and from $150 to $200 now. The attorneys have stipulated that the present value is $200. It was worth about $600 with the buildings and is worth $200 now. John M. Snyder died May 7, 1911, aged 82 years. He was 74 years of age at the time of the transfer. His wife had died in January, 1902, aged 70 years. Charles M. Snyder had advanced moneys to and paid debts for his father in excess of the value of the farm, and by the deed agreed to maintain him during life and to provide him with a suitable burial after death. He provided for him until July 15, 1905, when he went to plaintiff's house to live, and again from October, 1908, until July

13, 1910, when he (Charles M.) died. He paid $150 for a monument and his executrix $125 for his funeral expenses.

[1-3] Evidence was offered by plaintiff for the purpose of showing that his claim for board and services, upon which the judgment in Justice's Court was based, antedated the deed. Some of it was based on the testimony of plaintiff and his daughter and was incompetent. The remainder of it was based on the testimony of Pearl Barker, Abbie Morrison, and Isaac Sweet. Pearl Barker is a daughter of plaintiff, and about five years younger than Hattie Bettler. She testified that she saw her sister do general housework and barn chores for John M. Snyder; that she could not remember the dates, because she was so small; that it was after her sister left school; that her services would average "a day out of each week"; and that she heard John M. Snyder say that "he wanted her to come down and help him, and he would see she got her pay for it." Abbie Morrison testified that she lived near John M. Synder's farm for about six months in 1898, when she went there every day, and for a time, not stated, in 1900, when she did not go there so frequently; that she saw Hattie Bettler go there once, and sometimes twice, a day for an hour or two each day; and that she heard John M. Synder say more than once that "they would see that Hattie had her pay for waiting upon them and doing for them," and again that "he was going to pay her for her work." And Isaac Sweet, who was working a neighboring farm, said that he had seen Hattie at John M. Snyder's at different times; that she was not working, so far as he knew, but that John M. Snyder, on one occasion, while fixing a rake at his farm, commenced to talk about Hattie, and said, "I am going to pay Hattie." John M. Snyder testified in the supplementary proceedings that he did not owe plaintiff a cent.

The evidence relating to the claim is very weak, so much so that it is more than probable that John M. Snyder did not know or think, at the time of the conveyance, that plaintiff would make or present it. At any rate, there is no evidence to this effect; and, certainly, there is no evidence that Charles M. Snyder knew, or thought at that time, that plaintiff had or would make or present such a claim. The charge of collusion is the same as that made in the action on the undertaking. Charles M. Snyder was not a party to the action in which the judgment was obtained. He may therefore question the validity of that judgment, if there was fraud and collusion in obtaining it, just as he did in the action on the undertaking. The rule applied there is applicable here, so that it becomes a question of fact whether or not there was fraud and collusion in procuring the judgment. The facts have been detailed, and it seems unnecessary to repeat. They make it clear that there was. Plaintiff, therefore, should not and cannot be permitted to benefit himself by his own fraudulent conduct, and his complaint is dismissed, with costs.